**ARBOR WINDSOR COURT, LTD., Appellant**

v.

**WEEKLEY HOMES, LP, Appellee**

**NO. 14–13–00480–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Majority and Dissenting Opinions filed March 17, 2015

Rehearing En Banc Overruled June 2, 2015

Neal D. Cannon, Jr., Houston, TX, Kemp W. Gorthey, Austin, TX, for Appellant.

N. Terry Adams, Jr., Houston, TX, for Appellee.

Panel consists of Justices McCally, Busby, and Donovan.

OPINION

Sharon McCally, Justice

Appellant, Arbor Windsor Court, Ltd. (Arbor), appeals the trial court's judgment following a jury verdict. Specifically, in two main issues, Arbor contends the trial court erred in rendering a take-nothing judgment on its breach of contract claims against Weekley Homes, LP (Weekley). Weekley also asserts two conditional cross-points in support of the trial court's judgment. We affirm.

## I. Background

### A. Summary Factual Background

In April 2006, Arbor and Weekley entered into an "Agreement for Sale and Purchase of Lots" (the Agreement) whereby Arbor would purchase the land and develop the lots, and then Weekley would buy the developed lots. To that end, Arbor secured a $3,850,000 loan to purchase the land and develop 32–35 lots. Arbor's loan had a two year payoff, beginning on June 30, 2006, and was secured by a deed of trust. The Agreement between Arbor and Weekley provided a rolling schedule for Weekley to purchase the lots. From 2006 to December 1, 2008, the disputed evidence at trial showed that each party believed the other was not fulfilling its obligations under the Agreement and they attempted resolution through amended agreements, culminating in the parties' final Fourth Amendment. By this time, Weekley had bought only 18 of the lots and, as a result, Arbor alleges, Arbor was in default on the loan.

In March 2009, the mortgage company advised Arbor that Texas Community Bank purchased its loan. Arbor later learned the loan had been subsequently purchased by FETC, the entity which eventually gave Arbor notice of its intent

to post the land for foreclosure. Arbor proposed to Weekley that Arbor and Weekley jointly attempt to avoid the foreclosure. They did not. FETC foreclosed on the property. Weekley appeared at the foreclosure sale and purchased the property for $1,320,000.

## B. Procedural Background

Arbor sued Weekley[1] for breach of the Agreement and its amendments for failing to purchase lots according to the schedule, as well as for fraud and wrongful foreclosure. Weekley counter sued Arbor for breach of contract. The parties tried their claims to a jury.[2] Some of the jury's answers favored Arbor and some favored Weekley. Because the issues dispositive of this appeal turn entirely upon the jury's answers to (or failures to answer) Questions Nos. 1, 2, 3, and 4, we set forth those questions and any associated predicate instructions verbatim, along with the responses from the jury:

- *Question No. 1*

Question No. 1

Do you find that Arbor Windsor Court performed all of the conditions precedent to the agreement as set forth below:

> Provided Weekley Homes with 15 days written notice of default under the written agreement so that Weekley could cure such default.

Answer "Yes" or "No."

The jury answered Question No. 1 "No."

- *Question No. 2*

Question No. 2 is preceded by the following predicate instruction: "If you answered 'Yes' to Question No. 1, answer the following question. Otherwise, do not answer question No. 2."

Question No. 2

Was Arbor Windsor Court excused from sending a notice of default to Weekley Homes?

You are instructed that Arbor Windsor Court is excused from complying if the failure, if any, was

1. not material, or

2. was waived, or

3. if Weekley Homes anticipatorily repudiated the agreement or

4. if Weekley Homes is estopped from complaining of Arbor Windsor Court's failure to comply with the agreement.

Answer "Yes" or "No."

The jury did not answer Question No. 2 because of the predicate.

- *Question No. 3*

Question No. 3

Did Weekley Homes fail to comply with the agreement?

You are instructed that Weekley Homes is excused from complying if the failure, if any, was

1. not material, or

---

1. This litigation began with Arbor's suit against FETC seeking to enjoin foreclosure. Arbor also filed a notice of lis pendens. Weekley learned of the lis pendens when it attempted to sell a home in the subdivision; it intervened in the "Arbor v. FETC" suit to quiet title and to obtain a release of the lis pendens. Arbor then amended its petition, adding additional claims against FETC, Weekley, and various homeowners. Weekley obtained its quiet title and a release of the lis pendens. Arbor then non-suited the homeowners and FETC, thereby leaving Weekley as the only defendant at trial.

2. The trial court ruled that the only questions to be submitted to the jury were on the parties' respective breach of contract claims, thereby directing a verdict on Arbor's other claims. Arbor does not appeal from this decision.

2. was waived, or

3. if Arbor Windsor Court anticipatorily repudiated the agreement

4. if Arbor Windsor Court is estopped from complaining of Weekley's failure to comply with the agreement.

Answer "Yes" or "No."

The jury answered Question No. 3 "Yes."

• *Question No. 4*

Question No. 4

Did Arbor Windsor Court fail to comply with the agreement?

You are instructed that Arbor Windsor Court is excused from complying if the failure, if any, was

1. not material, or

2. was waived, or

3. if Weekley Homes anticipatorily repudiated the agreement or

4. if Weekley Homes is estopped from complaining of Arbor Windsor Court's failure to comply with the agreement.

Answer "Yes" or "No."

The jury answered Question No. 4 "No."

Arbor sought judgment on the jury verdict based upon the jury's answer to Question No. 3 (Weekley failed to comply). Weekley sought judgment on the jury verdict based upon the jury's answer to Question No. 1 (Arbor did not perform the

condition precedent), or in the alternative, judgment notwithstanding the verdict. The trial court rendered a take-nothing judgment in favor of Weekley without specifying the basis therefor. This appeal ensued.

## II. ANALYSIS

### A. Weekley's Motion for Judgment on the Verdict

The sole basis for Weekley's motion for judgment on the verdict was the jury's answer to Question No. 1. As a factual matter, Arbor did not and does not here dispute that it failed to send the written notice. Arbor's factual position is that it "accepted Weekley's request not to send this notice." Therefore, Arbor does not challenge the sufficiency of the evidence to support the answer to Question No. 1.

█ Instead, Arbor argues two independent legal reasons that the jury's answer to Question No. 1 on condition precedent does not support a Weekley Homes judgment. Both of these issues turn on well-established law governing conditions precedent: A condition precedent must either be met or excused before the other party's obligation may be enforced.[3] *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). First,[4] Arbor argues that Question No. 1 should not

---

**3.** We note that in some circumstances abatement is the proper remedy for the failure of a party to provide notice of default and an opportunity to cure. *See, e.g., Shafighi v. Tex. Farmers Ins. Co.*, No. 14–12–00082–CV, 2013 WL 1803609, at *5 (Tex.App.–Houston [14th Dist.] Apr. 30, 2013, no pet.) (mem.op.) (noting that the insurer's remedy to enforce a condition precedent in its policy is abatement). In this case, Weekley did not ask the trial court to abate the action or otherwise afford an opportunity to cure the default. However, Arbor does not argue, and therefore we do not reach, any question about (a) whether Weekley waived the condition precedent by its failure to seek abatement and an

opportunity to cure or (b) whether a take nothing judgment is a proper remedy for Arbor's alleged unexcused failure to comply with a condition precedent to give notice of default and an opportunity to cure. As such, we assume for this case, as have the parties, that Arbor may not recover in breach of contract if it has failed to perform an unexcused condition precedent.

**4.** We reorder Arbor's issues and first address the trial court's ruling on the motion for entry of judgment on the jury's verdict because that issue is dispositive of the appeal.

have been submitted to the jury because the contractual fifteen-day notice provision is not a condition precedent as a matter of law.[5] Second, Arbor argues that even if the notice provision is a condition precedent, the jury's answer to Question No. 1 became immaterial when the jury explicitly found, in answer to Question No. 4, that Arbor did not fail to comply with the Agreement and thereby implicitly determined that Arbor was excused from performing the condition precedent.

## B. Standard of Review for Entry of Judgment on Jury Verdict

 Our review of a trial court's entry of judgment on a jury verdict presents a pure question of law. *Tex Star Motors, Inc. v. Regal Fin. Co., Ltd.,* 401 S.W.3d 190, 202 (Tex.App.–Houston [14th Dist.] 2012, no pet.) (noting that determining the legal effect of the jury's answers is a question of law). As such, we review the trial court's decision de novo. *See Hicks v. Hicks,* 348 S.W.3d 281, 284 (Tex.App.–Houston [14th Dist.] 2011, no pet.) ("We review questions of law de novo."); *see also Resurgence Fin., L.L.C v. Lawrence,* No. 01–08–00341–CV, 2009 WL 3248285, at *2 (Tex.App.–Houston [1st Dist.] Oct. 8, 2009, no pet.) (mem.op.) (citing *In re Humphreys,* 880 S.W.2d 402, 404 (Tex. 1994) (stating in the context of entry of judgment that "questions of law are always subject to a *de novo* review")).

## 1. The fifteen-day notice provision is a condition precedent.

The Agreement included the following fifteen-day notice provision:

> Notwithstanding the foregoing, Seller and Purchaser covenant and agree, each with the other, to give fifteen (15) days' written notice of any default during which time same may be cured prior to exercise of any rights or remedies pursuant to this Agreement.

As outlined above, the jury determined that Arbor did not perform the "condition precedent" to provide Weekley with fifteen days' written notice of default.

 We resolve whether a contractual provision is a covenant or a condition precedent by examining the entire contract to determine the parties' intent. *See Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex.1990). Our goal is to determine whether the parties intended that the right or responsibility at issue be conditional. *See* Restatement (Second) of Contracts § 226 cmt. a (1981). As part of that contract review, we apply additional common law principles that reflect Texas public policy disfavoring conditions precedent. For example, the Texas Supreme Court instructs that "[i]n construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible." *Criswell,* 792 S.W.2d at 948. Thus, if the language of the contract is susceptible to a non-condition precedent interpretation, we accept that con-

---

**5.** Weekley contends that Arbor's challenge is actually a complaint of charge error, which Arbor waived by failing to lodge this objection to the question in the trial court. Arbor does not contend that it preserved a challenge to the wording of Question No. 1. Instead, Arbor argues that, as a legal matter, this court "may look at the written notice provision and determine it is a mere covenant, and not a condition precedent." Because we conclude that the notice provision is a condition prece-

dent, we need not resolve whether Arbor has waived its complaint as an error in the jury charge or whether Arbor has not waived its complaint as an error in the judgment. *See, e.g, Soon Phat, L.P. v. Alvarado,* 396 S.W.3d 78, 105 (Tex.App.–Houston [14th Dist.] 2013, pet. denied) (distinguishing between a claim of jury charge error and a claim that the charge, as submitted, cannot support the judgment).

struction and construe the language as a mere covenant. *See id.*[6]

We begin by noting that neither party argues that the notice provision of the Agreement is ambiguous.[7] As such, neither party undertakes in any way to set forth two reasonable but competing interpretations of the provision. Instead, Arbor points to (a) the parties' use of the word "covenant" and (b) the absurd result that would flow from reading the provision as a condition precedent.[8] And, Weekley points to the parties' use of the term "prior to" and argues that this phrase constitutes conditional language that is completely without meaning unless it creates a condition precedent.

■ The parties are in accord on the general principles of contract interpretation as it relates to conditions precedent. To glean the parties' intent to create a condition precedent, we look for conditional language such as "if," "provided that," or "on condition that." *Id.* Our task is to construe the entire agreement, and that task is not altered by the parties' use of "magic words" in the contract or the absence of such words. *See id.; see also Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 281–82 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (refusing to find even from the parties' use of the word "condition" that the parties meant "condition precedent").

■■ We note, too, that the conditional language must connect the condition precedent to the conditioned obligation. *See Solar Applications Eng'g, Inc. v T.A. Operating Corp.,* 327 S.W.3d 104, 110 (Tex. 2010) (rejecting the notion that conditioning some obligations necessarily operates to condition others). In other words, the mere existence of conditional language within a contract does not suggest that all obligations of one party are conditions precedent to the performance by the other party. By way of simple example, the Dallas Court of Appeals easily rejected a general contractor's attempt to condition its full payment on a landscaping subcontractor's promise to complete its work within ten days. *See Landscape Design & Constr., Inc. v. Harold Thomas Excavating, Inc.,* 604 S.W.2d 374, 377 (Tex.Civ. App.–Dallas 1980, writ ref'd n.r.e.). In that case, Article III of the parties' contract provided that "[t]ime is of the essence and the subcontractor agrees to complete the work as described in Article II within 10 working days of commencement." *Id.* Article V contained the conditional language: "Full payment shall be due when the work described in this contract is fully completed and performed consistent with Article II and Article IV." *Id.* Neither Article III nor the ten-day promise was mentioned in Article V. *Id.* Thus, the court determined, the promise

---

6. A covenant is "an agreement to act or refrain from acting in a certain way." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.,* 327 S.W.3d 104, 108 (Tex.2010) (citing *Reinert v. Lawson,* 113 S.W.2d 293, 294 (Tex. Civ.App.–Waco 1938, no writ)). The remedy for a party's breach of a covenant is a claim for damages. *See id.*

7. We note the parties' positions on ambiguity for context alone, as we are not bound by such. We must and do consider, as a question of law, whether the Agreement is susceptible to more than one reasonable interpretation after applying the relevant rules of contract construction. *See NuStar Energy, L.P. v. Diamond Offshore Co.,* 402 S.W.3d 461, 466 (Tex.App.–Houston [14th Dist.] 2013, no pet.) (noting that the parties' arguments about competing interpretations do not render a contract ambiguous).

8. Prior to verdict, Arbor did not argue that the provision was a covenant instead of a condition precedent. Instead, Arbor asked the jury to determine that Arbor was excused from performing the condition precedent.

contained in Article III was not a condition to the full payment obligation in Article V because "Article V makes completion of the work according to Article II the only condition precedent to [the subcontractor's] right to full payment." *Id.*

Turning to Arbor's argument regarding construction, we acknowledge the facial appeal of Arbor's first argument that the parties chose the words "covenant and agree" as the introductory phrase to the contested provision. However, a single word or provision cannot be given controlling effect. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). The words "covenant and agree" do not always signal that a provision is purely a covenant. *See Cal–Tex Lumber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 809–10 (Tex.App.–Tyler 1999, no pet.). Nor do those words foreclose our review of the remainder of the contract. Although we resist any interpretation that results in forfeiture, we must nonetheless construe the entire provision to have meaning. *See Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex.App.–Houston [14th Dist.] 2012, pet. denied) (noting that in our effort to avoid construing a provision as a condition precedent we may not ignore plain language). Therefore, the parties' use of the words "covenant and agree" is not dispositive of the construction.

Arbor's second contract construction argument concerning a potential absurd result misses the mark. Focusing on conditions precedent *to formation,* Arbor suggests that to construe the notice provision in this case as a condition precedent to formation of the contract would lead to an absurd result and is therefore an impermissible construction. *See Criswell,* 792 S.W.2d at 948 (noting that when a condition would impose an absurd or impossible result, the agreement must be interpreted as a covenant rather than a condition). We agree, as to contract formation; a party could not be required to give notice of default prior to the formation of the contract. However, there are two types of conditions precedent. One is a condition to the formation of a contract and the other is a condition to an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). Indeed, the jury charge defined a "condition precedent," without objection, as "an event that must happen or be performed before a right can accrue to enforce an obligation." Arbor does not address conditions precedent to obligations within an existing contract and, therefore, does not explain how it would be absurd that Arbor's right to resort to remedies under the Agreement is conditioned on its first providing notice to Weekley that it is in default and providing Weekley fifteen days to cure such default. This court has, without absurd results, construed other notice provisions as conditions precedent tied to acts or events that occur subsequent to the making of the contract. *See, e.g., Cajun Constructors,* 380 S.W.3d at 826. We conclude that the construction of the notice provision in this case as a condition precedent does not lead to an absurd result.

The parties do not cite, and we have not found, any cases construing identical language that couples "covenants and agrees" with "prior to." We are persuaded, however, that Weekley is correct that the provision, as a whole and as written, contains explicit conditional language—"prior to"—that will have no meaning if construed as no more than a mere covenant. By their agreement, "Seller and Purchaser covenant and agree, each with the other, to give fifteen (15) days' written notice of any default during which time same may be cured prior to exercise of any rights or

remedies pursuant to this Agreement." The sentence does not contain the oft-cited traditional conditioning language: "if," "provided that," or "on condition that." But, again, we are not looking for magic words. Texas courts have found other words and phrases to be conditional language. *See Dallas Berkshire Partners, Ltd. v. James French Photography, Inc.,* No. 05–98–01352–CV, 2001 WL 200144, at *5 (Tex.App.–Dallas Mar. 1, 2001, pet. denied) (not designated for publication) (holding that the notice-of-default provision stating "Tenant shall not exercise any such remedy **unless**" is a condition precedent to recovery for breach); *see also Wright v. Modern Group, Ltd.,* No. 13–12–00293–CV, 2013 WL 4714930, at *7 (Tex. App.–Corpus Christi Aug. 30, 2013, pet. denied) (mem.op.) (holding that the term "qualifying event payment" constituted conditional language).

By contrast, the language construed by courts to be mere covenants without condition is wholly distinguishable. For example, our sister court construed an arbitration provision that required "[e]ach of the parties [to] pay an equal share of the arbitration costs, fees, expenses, and of the arbitrator's fees, costs and expenses" not to condition the requesting party's right to demand arbitration. *See Amir v. Int'l Bank of Commerce,* 419 S.W.3d 687, 693 (Tex.App.–Houston [1st Dist.] 2013, no pet.). Similarly, as outlined above, the Texas Supreme Court found no applicable conditional language in *Solar Applications Engineering. See* 327 S.W.3d at 109. The provision stated that Solar's

> final Application for Payment shall be accompanied (except as previously delivered) by: (i) all documentation called for in the Contract Documents, including but not limited to the evidence of insurance, (ii) consent of the surety, if any, to final payment; and (iii) complete and legally effective releases or waivers (sat-isfactory to [TA] ) of all Lien rights arising out of or Liens filed in connection with the Work.

*Id.* (alteration in original).

Here, the conditional language "prior to" is within not just the same paragraph as the reference to exercising contractual remedies, but within the same sentence. Arbor's notice of default to Weekley and Weekley's fifteen-day opportunity to cure must occur "prior to" Arbor invoking contractual remedies for Weekley's default. To conclude that the "prior to" phrase does not impose a condition on Arbor's right to invoke remedies, we must place a period after the word "cured," though the parties did not. In that regard, the provision is more like "unless" conditional language. *See Dallas Berkshire Partners,* 2001 WL 200144, at *5 (holding that the notice-of-default provision stating "Tenant shall not exercise any such remedy unless" is a condition precedent to recovery for breach). Arbor does not urge another construction, and we cannot craft this sentence in a way that yields anything other than a condition precedent.

The parties do not point us to any other provisions in the Agreement that aid our construction. However, we find some guidance on the parties' intent in Paragraphs 2 and 17. One of the remedies explicitly available to Arbor under Paragraph 17 of the Agreement on occasion of Weekley's failure to comply with the agreement is to terminate the Agreement and retain the Earnest Money. Yet, Paragraph 2 of the Agreement, entitled "Earnest Money" states that

> [t]he Title Company shall not release the Earnest Money unless and until Seller [Arbor] has provided to the Title Company an affidavit of Seller [Arbor] stating that: 'Substantial Completion pursuant to the Agreement for Sale and

Purchase of Lots dated (the Effective Date of his Agreement) has been met on or before the Scheduled Completion Date, a default has occurred by Purchaser under said Agreement, *Seller has provided Purchaser with notice of the default as required in the Agreement, such default has not been cured within the cure period provided in said Agreement,* and Seller is not in default under said Agreement and has not been in default under said Agreement during the period of Purchaser's default.

(emphasis added). This paragraph tends to confirm an agreement between the parties that Arbor may not obtain one of the contracted remedies, the Earnest Money, unless and until it swears that it has given Weekley notice and an opportunity to cure.

Paragraph 7, entitled "Substantial Completion," gives some insight into the parties' intentions on another area of notice and cure. It requires Arbor to "promptly furnish written notice" of its belief that all Lots are substantially completed. Weekley then has fifteen days to inspect the Lots and notify Arbor of any item with which it disagrees. The paragraph then states the consequences of Weekley's failure to give such notice: "The failure of Purchaser to so notify Seller within such fifteen (15) day period shall be deemed to be Purchaser's agreement that all conditions to Substantial Completion have been satisfied and that Substantial Completion has occurred." And, Paragraph 7 concludes with the following sentence: "Notwithstanding the foregoing, Purchaser shall have the right to purchase any Lot prior to the Substantial Completion Date, but the same shall not relieve Seller from its covenants and obligations to satisfy the aforementioned requirements for such Lot or Lots in accordance with the terms of this Agreement."

In Paragraph 7, the parties have explicitly stated the effect of silence where notice is required; that is, Weekley is deemed to be in agreement. And, through Paragraph 7, which is in part a notice and cure provision, the parties have expressed their intent that Arbor's obligations under the Agreement are not conditioned on Weekley purchasing a lot *after* Substantial Completion. This paragraph demonstrates how the parties drafted a paragraph to avoid a condition precedent. *See TransTexas Gas Corp. v. Forcenergy Onshore, Inc.,* No. 13–02–387–CV, 2004 WL 1901717, at *8 (Tex.App.–Corpus Christi Aug. 26, 2004, pet. denied) (mem.op.) (noting that the parties demonstrated in a separate provision of the contract that they knew how to draft a condition precedent if such is what they intended). The absence of any such language in the paragraph at issue here tends to confirm, by contrast, that (a) Arbor giving notice and an opportunity to cure is not simply a choice but a requirement; and (b) Arbor's rights under the Remedies provision do not arise until Arbor gives notice and fifteen days to cure.

In summary, the provision itself contains conditional language. Other paragraphs of the Agreement support the interpretation that the provision is a condition precedent. The provision is not described as a covenant but begins with the introductory words "covenant and agree." To construe the provision as either a covenant or an ambiguous provision in an effort to give meaning to this single phrase out of context would ignore the remaining language and eviscerate the only reasonable meaning of the paragraph. Having examined the contract as a whole, we conclude that we are "compelled to [construe the provision as a condition precedent] by language that may be construed in no other way." *Chambers v. Hunt Petroleum Corp.,* 320 S.W.3d 578, 584 (Tex.App.–Tyler 2010, no

pet.) (citing *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex.1987)); *see also Cajun Constructors, Inc.,* 380 S.W.3d at 826. We therefore conclude, as a matter of law, that the notice provision is a condition precedent to Arbor's right to remedy for Weekley's default. The trial court did not err in submitting Question No. 1 to the jury.

**2. Arbor failed to obtain a jury finding on its excuse defense.**

■ Arbor argues that even if the notice provision is a condition precedent, the jury's answer to Question No. 1 will not support a Weekley take-nothing judgment. Arbor acknowledges that "due to a defective condition of the jury question asking whether Arbor Windsor was excused from sending notice of breach, the jury did not expressly say it did not have to do so." Arbor nonetheless argues that once the jury answered "no" to Question No. 4, the jury impliedly determined that Arbor was excused from providing notice, and the jury's answer to Question No. 1 became immaterial.

■ A jury question is immaterial when its answer cannot alter the effect of the verdict. *Nat'l City Bank of Ind. v. Ortiz,* 401 S.W.3d 867, 883 (Tex.App.– Houston [14th Dist.] 2013, pet. denied). Arbor reasons that the jury's answer to Question No. 1 cannot alter the effect of the verdict in this case because the jury found that "Arbor Windsor complied with the Agreement." The jury did not, however, find that Arbor complied with the Agreement. The jury found that Arbor did not fail to comply with the Agreement. In Texas law, this is a distinction with a difference.

■ A negative answer to a jury question on "failed to comply with a contract" is not a positive finding that such party "complied with a contract." *See Grenwelge v. Shamrock Reconstructors, Inc.,* 705 S.W.2d 693, 694 (Tex.1986) (holding that a jury's failure to find breach of contract meant the plaintiffs failed to carry their burden of proof, not that the defendant substantially performed the contract); *see also Cullins v. Foster,* 171 S.W.3d 521, 536–37 (Tex.App.–Houston [14th Dist.] 2005, no pet.) (holding that "[i]f the jury makes a negative finding in answer to a question, it means the party with the burden of proof has failed to carry its burden"). Here, Question No. 4 placed the burden on Weekley to establish that Arbor failed to comply with the Agreement. Thus, the jury's negative answer means no more than Weekley failed to meet its burden to show that Arbor failed to comply with the contract. It is no finding that Arbor actually complied with the contract.

Moreover, as Arbor itself points out, the jury may have concluded in Question No. 4 that Arbor did not fail to comply with the contract for a number of reasons based upon the instructions given. Within Question No. 4, the jury was instructed that Arbor is excused "from complying if the failure, if any, was (1) not material, or (2) not waived, or (3) if Weekley Homes anticipatorily repudiated the agreement or (4) if Weekley Homes is estopped from complaining of Arbor Windsor Court's failure to comply with the agreement." Thus, the jury may have simply concluded that Weekley did not bring a preponderance of evidence either (1) that Arbor failed to comply with the Agreement or (2) that Arbor's failure to comply with the condition precedent was not excused.[9] Even if

---

9. Question No. 4 appears to improperly shift the burden to Weekley to establish that Arbor was not excused from compliance with the contract. Neither party complains here of the burden on the instruction. However, it is further support for our conclusion that the

we were to ignore the fact that neither the question nor the instructions make reference to notice or conditions precedent, we may not, in an effort to interpret the jury's verdict, guess about how the jury reached its answer. Thus, Arbor did not obtain an implicit finding from the jury on its excuse affirmative defense to the notice condition precedent.

Instead, our analysis falls within Texas Rule of Civil Procedure 279 [10] and the Texas Supreme Court decision *DiGiuseppe v. Lawler*, 269 S.W.3d 588 (Tex.2008). In *DiGiuseppe*, the parties submitted their breach of contract claims on broad-form questions. *Id.* at 592. DiGiuseppe failed to obtain a "ready, willing, and able to perform" fact finding to support his request for specific performance. *Id.* The evidence concerning whether DiGiuseppe was ready, willing, and able to perform was conflicting. *Id.* at 595. The Texas Supreme Court determined that the jury's finding that DiGiuseppe "complied with the contract" was neither essential nor necessarily referable under Rule 279 to DiGiuseppe's request for specific performance because the jury might have found under the jury instructions that DiGiuseppe "complied with the contract" because he was excused from complying, not because he was both ready, willing, and able and did, in fact, comply. *See id.* at 598.

Arbor does not and could not argue that the jury's finding on Weekley's breach of contract ground of recovery is necessarily referable to Arbor's excused-condition-precedent ground of defense under Rule 279. As outlined herein, Question No. 4 did not mention the condition precedent,

did not place the burden on Arbor, and because of its broad form, did not cause the jury to answer any question that would permit an inference that Arbor brought a preponderance of evidence that it was excused from satisfying the condition precedent.

In summary, Arbor had the burden to prove that it was excused from sending a notice of default to Weekley as a condition precedent to its right to invoke contractual remedies for default. Thus, Arbor also had the burden to obtain a jury finding that it was excused. Because of the improper predicate to Question No. 2, to which Arbor did not object, Arbor did not obtain a jury finding that it was excused. Arbor does not argue that it conclusively established that it was excused from sending notice of default. Therefore, excuse from performing the condition precedent, as an "independent ground ... of defense" is a ground that has been waived by the failure to submit it. *See* Tex.R. Civ. P. 279.

### III. CONCLUSION

Because we conclude that the fifteen-day notice provision is a condition precedent, and we further conclude that the jury's answer to Question No. 4 does not render the jury's answer to Question No. 1 immaterial, the trial court did not err in the implicit conclusion that Arbor failed to perform an unexcused condition precedent. We, therefore, hold that the trial court properly rendered a take-nothing judgment for Weekley on its affirmative defense, and we affirm the judgment. As

---

answer to Question No. 4 does not implicitly mean that Arbor met its burden to establish that it was excused from performing the condition precedent.

10. Rule 279 provides that "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex.R. Civ. P. 279.

such, we do not address Weekley's alternate bases for affirming the judgment.

(Donovan, J., dissenting).

## DISSENTING OPINION

John Donovan, Justice

Appellant, Arbor Windsor Court, Ltd. ("Arbor"), appeals the final judgment granting the "Motion for Entry of Judgment, *or in the Alternative*, Motion for Judgment Notwithstanding the Verdict" filed by appellee, Weekley Homes, LP. ("Weekley"). It is not clear from the final judgment which motion the trial court granted; therefore, in two issues, Arbor appeals the granting of *both* motions.

The majority affirms what it refers to as a "take-nothing judgment" in Weekley's favor, holding a notice of default provision in the agreement between Arbor and Weekley was a condition precedent to its filing suit. I do not agree that provision is a condition precedent. Further, the Majority does not address Arbor's appellate challenge to the granting of Weekley's Motion for Judgment Notwithstanding the Verdict ("JNOV"). I believe the trial court erred in awarding final judgment in Weekley's favor. Therefore, I respectfully dissent.

## I. BACKGROUND

### A. Factual Background

This suit concerns a real estate development envisioned by John Riddle, Arbor's president. After two years of negotiation with the City of Spring Valley, Arbor became the owner of the property in 2006. Arbor's concept was a development of large, upscale "patio townhomes" on small lots, all built in a coherent Georgian style.

Due to the size of the project, Arbor decided to partner with an established homebuilder—Weekley.

In April 2006, Arbor and Weekley entered into an "Agreement for Sale and Purchase of Lots" ("the Agreement"). The subdivision was named "Windsor Court." Arbor secured a loan for the purchase of the land and development of the subdivision. Weekley agreed to purchase the lots on a two-year schedule set forth in the Agreement which ensured the cash flow necessary to pay for the cost of the loan ($3,850,000). Weekley paid $500,000 earnest money, deposited with Priority Title.

The Agreement provided Arbor would be responsible for the basic development of the site within sixty (60) days of the Substantial Completion Date, which under Paragraph 7 of the Agreement was to occur "no later than January 30, 2007." However, Weekley accepted substantial completion as of March 29, 2007. In 2007, the parties agreed that the Agreement was in "full force and effect and neither party was in default," and they acknowledged "receipt of the 'Letter of Substantial Completion' on March 29, 2007, as required by the [Agreement]."[1] After accepting substantial completion on March 29, 2007, Weekley agreed to purchase ten lots within six months and five lots every three months until October 2008. The evidence revealed Weekley purchased ten lots in April 2007, two lots in May 2008, three lots in August 2008, and two lots on December 1, 2008.

The Agreement was amended four times. The first amendment merely evidenced the name of the actual developer of the property—Arbor Windsor.[2] The sec-

---

1. The delay from January to March was the result of several factors, and there was evi- dence that delays are not uncommon in a development of this nature.

2. The Seller's name in the Agreement was

ond amendment changed the schedule for Weekley's purchase of lots, acknowledging that the substantial completion date was March 29, 2007. The third amendment allowed Weekley to advance funds so that the project development could continue at a time when Weekley was not current on its contractual obligation to purchase lots in the time frame set forth in the Agreement. The advanced funds totaled approximately $82,000, an amount less than the cost of any one lot in the subdivision. A portion of these advanced funds were reimbursed to Weekley at lot closings in August and December 2008.

In November 2008, the purchase of lots was not occurring as contemplated under the Agreement and second amendment, which interrupted Arbor's payments to Graham Mortgage. The interruption caused Graham Mortgage to send a notice of default to Arbor, and Graham Mortgage requested Arbor send Weekley a notice of default. Arbor discussed this with Welch, Weekley's land acquisition manager, who pleaded with Arbor that it not send a notice of default.

On November 25, 2008, Riddle presented Welch another proposal to sell the remaining lots to Weekley for a discounted price, offering the remaining *seventeen* lots for $1,920,000. The alternative was to maintain the contract price and schedule, selling *seven* lots for $1,120,000. Weekley did not agree to the proposal; it purchased two lots in December 2008.

The parties entered into the fourth and final amendment, signed on December 1, 2008, days after Arbor's proposal to sell the remaining lots at a discount. Arbor acknowledged Weekley had purchased eighteen of the original 32–35 lots, and Arbor required Weekley to purchase two lots on or before December 2, 2008 and

"One Windsor Court, L.P."

one each month beginning in January 2009, until all the lots were purchased. Other than the two lots purchased in December 2008, Weekley did not make the agreed-upon purchases of lots in the time specified in the Agreement and the fourth amendment.

In March 2009, Graham Mortgage advised Arbor that Texas Community Bank purchased the loan. Arbor later learned the loan had, in fact, been purchased by FETC, the entity which eventually gave Arbor notice of its intent to post the land for foreclosure. However, prior to FETC giving Arbor notice of intent to foreclose, and acknowledging that Weekley had sold several lots during April–August 2009, Arbor proposed to Weekley that they work together to stop the pending foreclosure, with Arbor agreeing to pay Weekley's attorneys' fees. Weekley did not to respond to the offer.

In September 2009, FETC foreclosed on the property. Weekley appeared at the foreclosure sale and purchased the property for $1,320,000, an amount less than the cost of purchasing the seventeen lots which remained available for sale.

### B. Procedural Background

In late August, 2009, prior to foreclosure, Arbor sued FETC seeking affirmative relief. Approximately four months after FETC foreclosed and Weekley purchased the property at the foreclosure sale, Weekley intervened in Arbor's suit against FETC, seeking judgment against Arbor to quiet title. Weekley amended its petition in intervention alleging a breach-of-contract claim against Arbor, and asserting affirmative defenses. Arbor answered Weekley's petition in intervention, amended its petition, and added additional claims against various parties.

Eventually, the only defendant at trial was Weekley. The jury found Arbor did not send notice to Weekley and did not fail to comply with the Agreement. The jury awarded $987,567 in actual damages and $370,337 in attorneys' fees to Arbor. The jury found Weekley failed to comply with the Agreement and did not award damages or attorneys' fees to Weekley.

In two separate issues, Arbor appeals the final judgment in which the trial court granted Weekley's motion to enter judgment, or in the alternative, motion for JNOV. The Majority does not address both of Arbor's complaints. Instead, it "reorder[s]" the issues as if Arbor had complained only of the granting of the motion to enter judgment, and as noted above, the Majority refers to the final judgment as a "take-nothing judgment." Thus, the Majority fails to address Arbor's appellate complaint as to the final judgment which granted Weekley's motion for JNOV. I write, therefore, not only because I disagree with the manner in which the Majority characterizes the final judgment and Arbor's appellate complaints, but also because I disagree with the result.

## II. Analysis of Motion to Enter Judgment

The Majority holds the notice-of-default provision was a condition precedent to Arbor's breach-of-contract action and Weekley is entitled to judgment because Arbor did not give notice. I disagree that the provision is a condition precedent and, even if it were, I disagree Weekley has shown it is entitled to judgment in its favor.

## A. Covenant or Condition Precedent?

Paragraph 17 of the Agreement provides:

*Remedies and Notice. In the event of the failure of Seller to perform any of its* *obligations under this Agreement* (or the determination by Purchaser that any representation or warranty by Seller hereunder is false or misleading), Purchaser shall be entitled to either (i) terminate this Agreement ... (ii) enforce specific performance or pursue any other remedy provided by law or in equity or (iii) extend the time for performance...." *In the event of the failure of Purchaser to perform pursuant to this Agreement,* and provided that Seller is not in default under any of its obligations hereunder, then, in that event, Seller shall be entitled to (i) terminate this Agreement and retain the Earnest Money ... (ii) extend the time for performance ... or (iii) enforce specific performance as to the purchase of [17] Lots. *Notwithstanding the foregoing, Seller and Purchaser covenant and agree, each with the other, to give fifteen (15) days' written notice of any default during which time same may be cured prior to exercise of any rights or remedies pursuant to this Agreement ....*

(Emphasis added).

In determining whether the language of a contract is a condition precedent, the words of the contract control. *See Criswell v. European Crossroads Shopping Ctr. Ltd.,* 792 S.W.2d 945, 948 (Tex.1990). Generally, when performance is conditional, terms such as "if," "provided that," "on condition that," or some similar language of condition must be used. *Id.* If these particular words, or words of a similar nature, are not included in the contract, then the terms are construed as a covenant. *Id.* While there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976).

A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. *Id.* ... Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Id.* (Citations omitted).

A condition precedent is an event that must happen or a party must perform before a right can accrue to enforce an obligation. *Azad v. MRCO, Inc.,* 14–12–00165–CV, 2013 WL 6700285, at *6 (Tex. App.–Houston [14th Dist.] Nov. 2, 2013, pet. denied) (mem.op.) (citing *Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex.1992)) (holding "once the claim has been finalized" is not conditional language, and a plain reading of the contractual provisions which avoids forfeiture is the one to be adopted).[3] Failure to satisfy a condition precedent generally results in no liability, but failure to perform a contractual obligation may create liability. *McMahan v. Greenwood,* 108 S.W.3d 467, 484 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). Words such as "obligations and promises" do not indicate the creation of a condition precedent. *Id.* at 485.

In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible. *Hohenberg,* 537 S.W.2d at 3; *see also Criswell,* 792 S.W.2d at 948. When the condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition. *Id.*

Because of their harshness in operation, conditions are not favorites of the law. *Sirtex Oil Indus., Inc. v. Erigan,* 403 S.W.2d 784, 787 (Tex.1966); *see also Hohenberg,* 537 S.W.2d at 3.

The Majority holds the provision is a condition precedent to Arbor's breach-of-contract action, even though the provision lacks words commonly used to create a condition. In doing so, the Majority imposes a forfeiture of Arbor's rights which operates as a windfall to Weekley. *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.,* 327 S.W.3d 104, 110 (Tex. 2010) (citing Restatement (Second) of Contracts § 227, cmt. d (1981) (Section 227(2) favors "an interpretation that ... avoids the harsh results that might otherwise result from the non-occurrence of a condition and still gives adequate protection to the obligor.")).

Interestingly, the Majority relies on *Solar* for the proposition that "the conditional language must connect the condition precedent to the conditioned obligation." Yet, in *Solar,* the Supreme Court of Texas held a lien-release was a *covenant,* not a condition precedent to payment, even though there was "if/then" language which could signal a condition precedent. *See id.* However, a conclusion that payment was "conditioned" on a lien-release provision would operate as forfeiture which *Solar* avoided. *Id.* "In the absence of any conditional language, a reasonable reading of the lien-release provision is that it is a promise or covenant by Solar to provide a lien-release affidavit in exchange for receiving final payment. This interpretation avoids forfeiture and completes the contract." *See id.* at 109–110.

---

**3.** Black's Law Dictionary defines "condition precedent" as "An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. Black's Law Dictionary (10th ed.2014). It defines "covenant" as "A formal agreement or promise, usu. in a contract or deed, to do or not do a particular act, a compact or stipulation." *Id.*

Here, a reasonable interpretation of the notice provision which would avoid forfeiture is that notice was to be given for the purpose of curing default and, if default was not or could not be cured, then Arbor could pursue the remedies *set out in the Agreement.* The Majority's interpretation is unreasonable and works a forfeiture because neither the curing of Weekley's default was possible, nor was Arbor's ability to seek the remedies under the Agreement.

To hold that "Seller and Purchaser covenant and agree" is a condition precedent ignores the plain words used. The language does not set up an event which must occur before there is a right to performance. *See Hohenberg,* 537 S.W.2d at 3. At best, the language sets a timeframe for a party to cure a default, prior to pursuing the return/release of earnest money, extending time for performance, or seeking specific performance. Further, the provision does not preclude a breach-of-contract action in the event there is no notice—it merely requires that the defaulting party cure the default before the non-defaulting party pursues the remedies in the Agreement. *See Hirschfeld Steel Co., Inc. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 279, 281–82 (Tex.App.–Houston [14th Dist.] 2006, no pet.) (holding that providing maintenance program "as a condition of the ten year warranty" was not a condition precedent because there was no language stating seller's nonperformance of the maintenance program would void purchaser's warranty); *see also Wright v. Modern Group, Ltd.,* No. 13–12–00293, 2013 WL 4714930, at *6–7 (Tex.App.–Corpus Christi Aug. 30, 2013, pet. denied) (mem.op.) (holding that obligation to pay former employees conditioned on a "qualifying event" was a condition precedent—interpreting that company's payment not due employees unless a condition [sale of controlling interest in the company] occurred); *Eva-*

*dale Water Control and Improvement Dist. No. 1 v. J & D Constr.,* No. 09–09–00062–CV, 2010 WL 3518226, at *4–5 (Tex. App.–Beaumont Sept. 9, 2010) (mem.op.) (concluding phrase "retainage . . . shall not be paid [by District] to the Contractor until the [Governmental Board] has authorized a reduction in . . . retainage on the contract work" set up a condition precedent); *Cal–Tex Lumber Co., Inc. v. Owens Handle Co., Inc.,* 989 S.W.2d 802, 809 (Tex.App.–Tyler 1999, no pet.) (holding language that party " 'covenants and agrees' " to provide insurance was condition precedent to the *beginning* of operations under the agreement, but not as to one of the duties included in the agreement); *Marsh v. Marsh,* 949 S.W.2d 734, 744 (Tex.App.–Houston [14th Dist.] 1997, no pet.) (holding that construing the phrase "unless such [gift] taxes are paid" as a condition precedent to performance under agreement would render performance impossible because taxes could not be paid until after gifts were transferred).

To support its holding that "covenant and agree" is a condition precedent to Arbor's breach-of-contract action, the Majority ignores the rationale for notice of default being delivered; that is, to give the defaulting party fifteen days to cure the default. *See Dorsett v. Cross,* 106 S.W.3d 213, 217 (Tex.App.–Houston [1st Dist.] 2003, pet. denied) (noting that when the obligation of one party depends on a condition being performed, and fulfillment of the condition is prevented by the other party, the condition is considered fulfilled). Here, after Weekley intervened in Arbor's suit against FETC, and Arbor answered and sued Weekley, the property had been foreclosed on, Weekley purchased the property, and Arbor no longer possessed any interest in it. Thus, insisting Arbor give Weekley notice of default prior to filing suit, when it no longer owned the

development, is unworkable, unreasonable and operates as a forfeiture. In my view, holding that Arbor could not file its breach-of-contract suit unless and until it gave notice of default incentivizes Weekley's conduct which Arbor alleged violated the Agreement. *See: Zachry v. Port of Houston Auth. of Harris County,* 449 S.W.3d 98, 116 (Tex.2014) (refusing to enforce a provision which operated to allow one party to intentionally injure another without remedy).

But, even if notice of default were a condition precedent, it is only a condition precedent to Arbor's pursuing rights or remedies *pursuant to the Agreement.* Those remedies included the following: termination of the Agreement and retainage of the earnest money; extending the time for performance as may be mutually agreed upon; or enforcing specific performance as to the purchase of the seventeen remaining lots. Thus, a rational and reasonable interpretation of the Agreement is that the parties agreed to provide notice of default only to allow cure prior to exercising a remedy under the Agreement. Contrary to the Majority's interpretation, this interpretation does not result in forfeiture. Further, the Majority would require Arbor to give notice to Weekley at a time after the property had fallen into foreclosure, thus effectively terminating the Agreement and any of Arbor's rights or remedies contained in the Agreement.[4]

The Majority writes that "language construed by courts to be mere covenants without condition is wholly distinguishable," relying on *Amir v. International Bank of Commerce,* 419 S.W.3d 687, 693 (Tex.App.–Houston [1st Dist.] 2013, no pet.). The arbitration agreement in *Amir* contained *no* language that would make the sharing of arbitrator's fees, costs and expenses a condition on the party's right to demand arbitration. Further, in terms of notice, the *Amir* court reviewed the following language:

> *if* one party files suit outside of arbitration, [then] the other party can invoke their right to arbitration by providing 'timely written notice of intent to arbitrate.'

*Amir,* 419 S.W.3d at 692 (Emphasis added).

The bank argued it never received "written notice of intent to arbitrate," even though Amir had filed a motion to compel arbitration and served the bank with the motion. *Id.* at 692. *Amir* held that the bank's notice of Amir's intent to arbitrate satisfied this "condition precedent." *Id.* at 693. There was no such "if/then" language in the Agreement between Arbor and Weekley. A reasonable interpretation in providing notice of default was to allow Weekley the opportunity to cure, before resorting to remedies pursuant to the Agreement. However, that interpretation is neither possible nor reasonable.

The Majority holds the language employed in the Agreement is "more like 'unless' conditional language," citing *Dallas Berkshire Partners, Ltd. v. James French Photography, Inc.,* No. 05–98–01352–CV, 2001 WL 200144, at *5 (Tex. App.–Dallas Mar. 1, 2001, pet. denied) (not designated for publication). The lease language reviewed in *Dallas Berkshire* provided:

> In the event of any default by Landlord under this lease which would give Tenant the right to terminate this Lease, to abate rent or to exercise any other remedy against Landlord, Tenant shall not

4. Weekley purchased the property at the foreclosure sale; thus, Arbor had no rights at-

tendant to the development.

exercise any such remedy unless Tenant gives Landord written notice specifically describing Landlord's default and Landlord fails to cure such default within 30 days after receipt of such notice. . . .

The court held the provision was a condition precedent because its purpose was to allow the Landlord time to cure any default before the Tenant could exercise the remedies set out in the lease. *Id.* Arbor's suit for breach of contract—responding to Weekley's petition in intervention—was not a remedy set out in the Agreement; thus, notice was not a condition precedent to filing suit.

The Majority then rationalizes its conclusion by reference to Paragraphs 2 and 7 of the Agreement, stating Paragraph 2 "tends to confirm an Agreement" that Arbor may not obtain one of the contracted remedies unless and until it swears it has given Weekley notice and an opportunity to cure. Paragraph 2 provides that if Weekley is in default, then before earnest money is released, Arbor must allow Weekley to cure its default. This provision relates only to the release of earnest money and cannot be used as support for the Majority's holding that the Paragraph 17 "notice" is a condition precedent to Arbor's breach-of-contract suit. *See Landscape Design and Constr., Inc. v. Harold Thomas Excavating, Inc.,* 604 S.W.2d 374, 377 (Tex.Civ.App.–Dallas 1980, writ ref'd n.r.e.) (holding language will not be construed as a condition precedent when another reading of the contract is possible). The *Landscape* court reviewed five contractual provisions and noted that "time is of the essence" and agreement to "complete the work ... within ten days" was a covenant because there was no language conditioning payment on the ten-day provision; thus, even though there was no conditional language, completion of the work was the only condition precedent to

payment. *Id.* Here, there is another reading of the contract that is possible, precluding the Majority's holding that the "covenant and agree" notice provision is a condition precedent.

Further, relying on Paragraph 7 of the Agreement, the Majority holds Weekley's silence is deemed agreement, and that this contractual language demonstrates how the parties drafted a provision to avoid a condition precedent. Paragraph 7, entitled "Substantial Completion," contains the following:

[T]he failure of Purchaser [Weekley] to so notify Seller [Arbor] within such fifteen (15) day period shall be deemed to be Purchaser's agreement that all conditions to Substantial Completion have been satisfied and that Substantial Completion has occurred. . . .

Notwithstanding the foregoing, Purchaser shall have the right to purchase any Lot prior to the Substantial Completion Date, but the same shall not relieve Seller from its covenants and obligations to satisfy the aforementioned requirements for such Lot or Lots in accordance with the terms of this Agreement.

The Majority then concludes this provision demonstrates that the parties knew how to draft a provision to avoid a condition precedent. However, also included in Paragraph 7, between the two provisions set forth above, is a "notice" provision:

If Purchaser gives Seller notice of any material condition of Substantial Completion which has not occurred or been performed in Purchaser's reasonable opinion, Seller shall within ninety (90) days correct any work or defect. . . . In the event Seller is unable to cure purchaser's objections . . ., Seller shall immediately so notify Purchaser in writing, whereupon Purchaser shall elect ... within ten (10) days after Purchaser's receipt of Seller's notice, to either: (i)

extend the time for Seller to cure ... (ii) enforce specific performance of all obligations of Seller ... or (iii) terminate this Agreement....

While I do not believe this language is a condition precedent, I would note it is the *same type of notice language* found in Paragraph 17, which the Majority finds *is* a condition precedent. Further, without expressing any opinion on the parties' ability to draft an agreement, I disagree this language evidences that the parties knew how to draft a paragraph to avoid a condition precedent and that they chose to impose a condition precedent in Paragraph 17.

In sum, there is no language which explicitly states the parties' intention that notice of default was a condition precedent to Arbor's suit for breach of contract. *See TransTexas Gas Corp. v. Forcenergy Onshore, Inc.,* No. 13–02–387–CV, 2004 WL 1901717, at \*8 (Tex.App.–Corpus Christi, Aug. 26, 2004, pet. denied) (mem.op.). In *TransTexas,* three agreements were construed together. *Id.* at \*1, 5. The Letter Exchange Agreement provided that the parties "understood and agreed" that TransTexas must reassign within three years, and if it did not, the only remedy was specific performance or breach of contract. *Id.* at \*1. Forcenergy urged that the "subject to" language in the Assignment of Oil, Gas and Mineral Lease, when read in conjunction with the Letter Exchange Agreement, imposes conditions. *Id.* at \*6–7. As the Majority notes, the *TransTexas* court held that the parties knew how to draft a condition precedent. *Id.* at \*8. However, in *TransTexas,* there was another "reasonable reading" of the Letter Exchange Agreement that the parties intended it as a covenant, not a condition. *See id.* at \*8 (citing *Schwarz–Jordan, Inc., of Houston v. Delisle Constr. Co.,* 569 S.W.2d 878, 881 (Tex.1978)).

I believe the same result should be reached here. There is a reasonable interpretation which does not operate as a forfeiture; thus, in the absence of conditional language, the provision must be construed as a covenant, not a condition precedent. *See Chambers v. Hunt Petroleum Corp.,* 320 S.W.3d 578, 584 (Tex.App.–Tyler 2010, no pet.) (concluding a provision in a lease requiring that lessee pays all taxes is a covenant because construing it as a condition precedent is only appropriate unless there is language that may be construed in no other way).

Finally, the Majority notes that abatement is generally the proper remedy for failure to provide notice of default and an opportunity to cure, citing *Shafighi v. Texas Farmers Insurance Co.,* No. 14–12–00082-CV, 2013 WL 1803609, at \*5 (Tex. App.–Houston [14th Dist.] Apr. 30, 2014, no pet.) (mem.op.). I would note Weekley never raised lack of notice of default or sought abatement prior to trial, and it has shown no harm resulting from lack of notice of default. *See Lennar Corp. v. Markel Am. Ins. Co.,* 413 S.W.3d 750, 756 (Tex. 2013); *Fin. Indus. Corp. v. XL Specialty Inc. Co.,* 285 S.W.3d 877, 877–78 (Tex.2009) (concluding insurer may not deny coverage without a showing that the insured's failure to give written notice was prejudicial to the insurer—such failure was not a material breach); *PAJ, Inc. v. Hanover Ins. Co.,* 243 S.W.3d 630, 634–35 (Tex.2008) (holding even if the notice provision is a condition precedent to coverage, the insurer must show it was prejudiced by not receiving notice).

Finally, the Majority states that we must "assume for this case, as have the parties, that Arbor may not recover in breach of contract if it failed to perform an unexcused condition precedent." Arbor never made such a concession. In arguing the final judgment was improper, Arbor

maintained the condition precedent question was never appropriate with respect to its breach-of-contract action.

## B. Is Weekley Entitled to Judgment?

The Majority holds Weekley is entitled to judgment because Arbor failed to obtain a jury finding on excuse. I disagree. The jury found Arbor did not fail to comply with the Agreement. The instruction accompanying that question stated that Arbor was excused from complying if the failure to comply was not material, was waived, if Weekley anticipatorily repudiated the agreement, or if Weekley was estopped from complaining of Arbor's alleged failure to comply. The Majority holds that the jury's finding that Arbor did not fail to comply is not a positive finding that it complied with the contract because the jury's "no" answer could mean simply that Weekley did not meet its burden of proof on that question. The Majority then analyzes this jury finding in light of Texas Rule of Civil Procedure 279 and *DiGiuseppe v. Lawler*, 269 S.W.3d 588 (Tex. 2008), holding Arbor had the burden to prove excuse. While this would be an accurate holding had the notice provision been a condition precedent to Arbor's recovery, I do not believe this analysis is correct here.

In *DiGiuseppe*, the inquiry was whether a finding that DiGuiseppe "complied with the contract" could be considered a finding on an *essential element* of the claim for specific performance; that is, whether DiGiuseppe was "ready, willing, and able to perform" the contract. *Id.* at 593. Being "*ready, willing, and able to perform*" is an essential element of the claim for specific performance. *Id.* Here, any finding on excuse is essential only if the notice provision is found to be a condition precedent, which I would hold it is not.[5]

Further, the Majority is incorrect to affirm judgment in Weekley's favor because in the trial court Weekley did not argue the evidence was factually or legally insufficient to support jury's finding in answer to Question 3 that Weekley failed to comply with the Agreement.[6] Weekley's motion for judgment on the verdict, therefore, limits any sufficiency argument with respect to Question 3 because it did not seek to disregard the unfavorable finding.[7] *See Menchaca v. Bishop*, No. 14–94–00480–CV, 1996 WL 170272, at *1 (Tex.App.–Houston [14th Dist.] Apr. 11, 1996, no pet.) (not designated for publication) (holding when a party moved for judgment, that motion is considered "an acquiescense in the verdict, which will foreclose a subsequent attack on appeal." (citations omitted)). While I agree with the Majority that we may not guess how the jury reached its verdict, the

---

5. Additionally, if this provision were a condition precedent, I believe that the existence of Arbor's "failure to comply" question and accompanying instruction put Weekley on notice of another method as to how Arbor could be excused, if such were necessary; therefore, it could be construed as "necessarily referable" to the defense of excuse

6. Question 3 asked:
 Did Weekley Homes fail to comply with the agreement?
 You are instructed that Weekley Homes is excused from complying if the failure, if any, was

1. not material, or
2. was waived, or
3. if Arbor Windsor Court anticipatorily repudiated the agreement or
4. if Arbor Windsor Court is estopped from complaining of Weekley's failure to comply with the agreement.
 Answer "Yes" or "No."
 Answer: *Yes*

7. Weekley's motion for JNOV challenged only the lost profits and the exclusivity-of-remedies arguments.

jury's answers to Questions 3 and 4 must be given meaning, considering the state of the record as a whole. *See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 504–05 (Tex.App.–Houston [14th Dist.] 2007, pet. denied) (holding appellate court may not ignore jury answers where they can be "reconciled in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole.") "When the questions are amenable to more than one reasonable construction, we adopt the construction that avoids conflict." *See Jabri v. Alsayyed*, 145 S.W.3d 660, 668 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

Additionally, I would hold the trial court erred in granting Weekley's motion to enter judgment on the verdict and sustain appellant's second issue.

### III. ANALYSIS OF MOTION FOR JNOV

I also dissent because the Majority does not address Arbor's appellate complaint concerning the "alternative relief" in the final judgment. This issue must be addressed because it is unclear from the final judgment what relief the trial court intended to grant. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 690 (Tex.2012) (disapproving of "and/or" language because it leads to ambiguity and confusion).

### A. Standard of Review

We review a JNOV under a no-evidence standard, meaning we "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex.2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex.2007)). Our review is for legal sufficiency of the evidence supporting the verdict, keeping in mind that it is the jury's sole province to evaluate the credibility of witnesses and to determine the weight attached to it. *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 626 (Tex.App.–Houston [14th Dist.] 2009, pet. denied). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 820. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review.

We cannot substitute our judgment for that of the jury if the evidence falls within the "zone of reasonable disagreement." *Id.* We will uphold the jury's finding if more than a scintilla of competent evidence supports it and affirm the JNOV only when there is no evidence to support the jury's finding or if the evidence establishes a contrary answer as a matter of law. *See Tanner*, 289 S.W.3d at 830; *Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 105 (Tex.App.–Houston [14th Dist.] 2004, pet. denied).

### B. Did the Agreement Provide Exclusive Remedies?

Arbor argues that JNOV was improper because the remedies are not exclusive; specifically, Arbor argues, and the jury found, Arbor was not required to accept as damages the $500,000 in earnest money in lieu of asserting the common law breach-of-contract remedy. Weekley argued that the remedies set forth in Paragraph 17 (quoted above) are the exclusive remedies available to Arbor, which precluded its breach-of-contract action. Weekley argued the provision allowed Weekley to "pursue any other remedy provided by law

or in equity," but did not provide that same option to Arbor.

Remedies set forth in a contract may be either permissive or exclusive. *See Pelto Oil Corp. v. CSX Oil & Gas Corp.*, 804 S.W.2d 583, 586 (Tex.App.–Houston [1st Dist.] 1991, writ denied); *Vandergriff Chevrolet Co., Inc. v. Forum Bank*, 613 S.W.2d 68, 70 (Tex.Civ.App.–Fort Worth 1981, no writ). "A construction which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is clearly indicated or declared." *Id.* Every clause must be given meaning, viewed objectively rather than subjectively. *Id.* Unless it is clear that the parties intended that a particular remedy in the contract is exclusive, a party may pursue any remedy which the law affords in addition to the remedies set forth in the contract. *See 4N Int'l, Co. v. Metro. Transit Auth.*, 56 S.W.3d 860, 863 (Tex.App.–Houston [1st Dist.] 2001, pet denied) (citing *Accent Builders Co. v. Sw. Concrete Sys.*, 679 S.W.2d 106, 109 (Tex. App.–Dallas 1984, writ ref'd n.r.e.)).

The mere fact that a contract provides a particular remedy or set of remedies does not preclude other remedies, unless there is language which evidences the parties' intent that a particular remedy is the exclusive one. *See Bifano v. Young*, 665 S.W.2d 536, 539 (Tex.App.–Corpus Christi 1983, writ ref'd n.r.e.) (holding where lease agreement provided landlord "shall" terminate the lease, or pursue two other alternate remedies which the parties had marked through and eliminated, landlord was not foreclosed from pursuing common law remedy for breach of the lease agreement); *see also Winston Acquisition Corp. v. Blue Valley Apartments, Inc.*, 436 S.W.3d 423, 430 (Tex.App.–Dallas Jun. 30, 2014, no pet.) (holding that the language "seller may terminate this agreement and receive or retain, as seller's sole and exclusive remedy, the deposit from the title company as seller's liquidated damages" entitled seller to receive those funds as its exclusive remedy); *Crow–Billingsley Stover Creek, Ltd. v. McKinney Partners, L.P.*, No. 05–09–00962–CV, 2011 WL 3278520, at *7–8 (Tex.App.–Dallas Aug. 2, 2011, no pet.) (mem.op.) (holding that by using the terms "sole and exclusive remedy," the parties intended that recovery of earnest money was the only remedy, thus precluding a breach-of-contract action); *Ganske v. WRS Group, Inc.*, No. 10–06–00050–CV, 2007 WL 1147357, at * 3–4 (Tex.App.–Waco Apr. 18, 2007, no pet.) (mem.op.) (holding that even where terms of agreement provided parties "shall" be entitled to specific performance or injunctive relief or both, those remedies did not preclude a breach-of-contract suit); *Allen v. King*, No. 12–03–00140, 2004 WL 252097, at * 2 (Tex.App.–Tyler Feb. 11, 2004, no pet.) (mem.op.) (concluding where there is no language indicating parties intended contractual remedies were exclusive, a party can pursue any action available in order to obtain a remedy).

Weekley relied *on Myriad Development, Inc. v. Alltech, Inc.*, 817 F.Supp.2d 946, 964 (W.D.Tex.2011), which analyzed an agreement with two provisions for remedies in the event of "default" and "breach." The court held the two provisions could be harmonized if the "default" as used in one paragraph meant "material breach" and that the term "breach" in the second paragraph meant "immaterial breach." *Id.* Under this interpretation, Myriad had the right to either "(1) treat the material breach as a total breach and cease performance under the contract, or (2) treat the material breach as a partial breach, continue performance under the contract, and sue for damages caused by the breach." *Id.* Thus, Myriad was *permitted* to cancel the contract, but was not *required* to do so, demonstrating it was not

an exclusive remedy. *Id.* However, once Myriad chose to cancel the contract, it was limited to the remedy of cancellation because the contract provided: "In the event of any default . . . cancellation *shall* be the *sole* remedy available to either party . . . ." *Id.* at 958, 966. (Emphasis added). Clearly, cancellation became the exclusive remedy because the agreement stated it was the sole remedy. *See id.* at 966.

There is no similar language in the Agreement between Arbor and Weekley. *See DiGiuseppe,* 269 S.W.3d at 597 (noting that, where party expressly waived any right to claim damages, remedies were limited to either terminating contract and receiving refund of earnest money or seeking to enforce specific performance); *Fawcett, Ltd. v. Idaho Northern & Pac. R.R. Co.,* 293 S.W.3d 240, 248 (Tex.App.–Eastland 2009, pet. denied) (confirming that where the parties crafted a default provision to be the "sole and exclusive remedy," it presented the only remedies afforded); *Bifano,* 665 S.W.2d at 539 (holding that even where agreement provided landlord "shall" have the option to pursue any one or more remedies, the remedies were not exclusive); *Ganske,* 2007 WL 1147357, at *3–4 (holding language is not exclusive because no language stating it is exclusive, even where agreement provided the "parties shall be entitled to specific performance hereof or injunctive relief. . . ."); *Allen,* 2004 WL 252097, at *1, 3 (concluding that agreement providing purchaser "shall" be allowed time to cure and, if there is no cure, agreement "shall terminate and be void" does not preclude remedy for breach of contract).

Here, the Agreement provided that in the event of a default, both Arbor and Weekley "shall" do one of the following: choose to terminate the Agreement and retain (or be awarded) the Earnest Money; seek specific performance; or extend the time for performance. The Agreement also provided that Weekley "shall" be entitled to "pursue any other remedy provided by law or in equity." There was no similar provision for Arbor's remedies. The optional remedies afforded Weekley did not render those offered to Arbor "sole and exclusive" because that language is not found in the Agreement. "The mere fact that the contract includes a particular remedy does not mean that such remedy is exclusive." *See Myriad Dev.,* 817 F.Supp.2d at 964.

Therefore, because Paragraph 17 did not state that the remedies to be afforded either of the parties were the "sole and exclusive" remedies either could utilize in the event of a breach, and there was no additional language limiting remedies to those in the contract, I would hold Arbor was entitled to maintain its breach-of-contract action.

## C. Was there Factually or Legally–Sufficient Evidence of Damages?

Arbor next asserts the JNOV was improper because it is entitled to, and there is evidence of, the actual damages the jury awarded. Further, Arbor argues it was not limited to retaining the earnest money of $500,000 as liquidated damages; that is, it was entitled to pursue its common law remedy and recover "benefit of the bargain" damages. In its motion for JNOV, Weekley argued that there was no evidence to support the jury's determination of damages; however, it does not make that argument on appeal. Rather, *here* Weekley contends only the jury's finding that Arbor did not make an informed election of remedies is incorrect as a matter of law; that is, election of remedies forecloses the recovery of actual damages. I will address both arguments.

On the issue of damages, the jury heard the testimony of Arbor's expert, Scott C.

Mitchell, C.P.A. In his report, Mitchell outlined his calculation of damages. He noted fifteen of thirty-five lots remained unsold as of the date of foreclosure, September 1, 2009. Fourteen of the lots were priced at $140,000; one was priced at $170,000. The lost revenue from those lots was calculated to be $2,130,000. Mitchell determined that the interest accrual on this lost revenue was $987,854. Therefore, his gross damages calculation was $3,117,854. He then deducted from that total the amount of earnest money ($500,000) and the relief of the indebtedness on the loan ($1,225,391), resulting in "net damages" of $1,392,463. Mitchell also noted that a reduction of $355,062 which represented interest at 8% on the lost revenue figure from the date of foreclosure to the date of trial would reduce the total damages figure to $1,037,401.[8] He did not necessarily agree that reduction was necessary, but he included it in his report at the request of Riddle. Weekley cross-examined Mitchell, but did not offer any expert witness on its behalf.

In Question 7, the jury was asked to determine what sum of money would compensate Arbor for Weekley's failure to comply. Lost profits were defined as those profits that were a natural consequence of Weekley's failure to comply, "less the cost, if any, required to complete performance under the Agreement." "Recovery of lost profits does not require that the loss be susceptible to exact calculation." *Parkway Dental Assoc., P.A. v. Ho & Huang Prop., L.P.*, 391 S.W.3d 596, 608 (Tex.App.–Houston [14th Dist.] 2012, no pet.). Lost profits reflect the amount of damages for the loss of net income to a business, less expenses attributable to that business activity. *See id.* (citing *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex.2002)).

Mitchell calculated the amount of damages based upon the cost of the unsold lots, plus interest on that amount, less the reduction of the indebtedness and earnest money. The jury found damages in the amount of $989,567. This award was within the range of damages Arbor sought. In fact, this figure represented the total amount of damages Arbor sought, less the amounts of ad valorem taxes and unreimbursed expenses Weekley claimed it had advanced on Arbor's behalf. The trier of fact has discretion to award damages within the range of evidence presented at trial. *City of Houston v. Harris County Outdoor Adver. Ass'n*, 879 S.W.2d 322, 334 (Tex.App.–Houston [14th Dist.] 1994, writ denied). Thus, I conclude that legally-sufficient evidence supports the jury's award of damages.

### D. Election of Remedies

Also in its motion for JNOV, Weekley asserted the Agreement provided exclusive remedies, that Arbor retained the earnest money; and, therefore, it "is estopped from arguing to the contrary. The gist of Weekley's argument on appeal is apparently that Arbor elected to terminate the contract and retain the earnest money; therefore, it could not elect to pursue damages in its breach-of-contract suit. In fact, Weekley contends that Question 6 "assumed" Arbor made such an election and that the jury's "no" answer is incorrect as a matter of law. I disagree.

As discussed above, the Agreement did not preclude Arbor from pursuing its common law remedy for breach of contract because none of the different remedial options provided to Weekley and Arbor were written as "sole and exclusive." Thus, one option available to Arbor was to "terminate this Agreement and retain the Ear-

---

8. Welch testified the damages calculation did not give "credit" for all interest that had

accrued; however, he did not attach a valuation to that opinion.

nest Money as liquidated damages." However, there was no provision in the Agreement by which Arbor was required to do so.

The core purpose of the election-of-remedies doctrine seems to be to prevent a party from abusing the judicial process by obtaining a recovery against one defendant by asserting one set of facts and then later suing a second defendant seeking recovery by denying the alleged facts upon which the party recovered in the first suit. Because its purpose is different than the one-satisfaction rule, the election-of-remedies doctrine, when it applies, bars subsequent claims even if the recovery sought in the subsequent case when added to the past recovery would not exceed the amount of the plaintiff's loss.

*Horizon Offshore Contractors, Inc. v. Aon Risk Servs. of Tex., Inc.*, 283 S.W.3d 53, 60 (Tex.App.–Houston [14th Dist.] 2009, pet. denied).

Election of remedies requires that a party is choosing one of two inconsistent but coexistent modes of procedure and relief. *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex.App.–Houston [1st Dist.] 2012, pet. denied). The election-of-remedies defense operates to preclude relief when (1) a party successfully exercises an informed choice (2) between two or more remedies, rights or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 (Tex. 1980). Remedies are inconsistent when one of the remedies results from *affirming* the transaction and the other results from *disaffirming* the transaction. *Id.* (citing *Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex. App.–Fort Worth 2002, no writ) (Emphasis added)). Election of remedies is intended "to prevent a party who has obtained a specific form of remedy from obtaining a

different and inconsistent remedy for the same wrong." *Krobar Drilling*, 426 S.W.3d at 113 (citing *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex.1987)).

I would hold, therefore, the Agreement did not provide that any remedy was "sole and exclusive" and Arbor was entitled to seek damages in its breach-of-contract action, which was not inconsistent with any other remedy. As a result, there was no election of remedies as a matter of law. Arbor did not choose one of the non-exclusive options set forth in the Agreement. Rather, Arbor chose to sue to recover damages occasioned by Weekley's breach of contract.

In sum, I would sustain appellant's first issue.

## IV. CONCLUSION

I respectfully dissent because I construe the notice provision as a covenant, not a condition precedent. The Majority's construction of the provision as a condition creates a result which is unreasonable and operates as a forfeiture—all of which are to be avoided when a reasonable interpretation exists, as it does here. Therefore, to the extent the final judgment may be construed as the trial court granting Weekley's motion to enter judgment, I would hold the trial court erred in awarding judgment in Weekley's favor.

Additionally, I believe the Majority is required to analyze the portion of the final judgment which can be construed as granting Weekley's JNOV. I would hold the trial court erred in granting that relief because the remedies provision was not exclusive, and there was evidence to support the jury's award of lost profits damages and attorneys' fees.

Accordingly, I would sustain both of appellant's issues, reverse the trial court's

judgment, and render judgment that Arbor recover the following: actual damages in the amount of $987,567; attorneys' fees in the amount of $245,337 incurred for representation in the trial court; $50,000 in attorneys' fees for its successful appeal to the court of appeals; $25,000 in the event that Weekley files a petition for review in the Supreme Court of Texas; $25,000 for preparation of a brief on the merits in the Supreme Court of Texas; and $25,000 for oral argument and completion of all proceedings in the Supreme Court of Texas, all conditioned on Arbor's success on appeal, plus court costs and post-judgment interest as allowed by law.